FILED
2026 Mar-12  PM 01:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| JUMAR SIMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) **Case Nos.: 2:22-cv-8039-AMM** |
| v. | ) **2:18-cr-353-AMM-JHE-1** |
| | ) |
| UNITED STATES OF | ) |
| AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the court on petitioner Jumar Sims's Motion By A Person

In Federal Custody To Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. §

2255. Docs. 1–2.[1] For the following reasons, Mr. Sims's motion is **DENIED**.

### I.    BACKGROUND

In July 2018, a grand jury indicted Mr. Sims on two counts of distributing a

mixture and substance containing a detectable amount of heroin, in violation of 21

U.S.C. § 841(a)(1) and (b)(1)(C), and one count of possession with intent to

distribute fifty or more grams of methamphetamine and a mixture and substance

---

[1] Citations to documents in the court's record in these Section 2255 proceedings
appear as "Doc. __." Citations to documents in the court's record in the criminal
proceedings against Mr. Sims, Case No. 2:18-cr-353-AMM-JHE-1, appear as
"Crim. Doc. __."

containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(C). Crim. Doc. 1. Mr. Sims was subsequently arrested. Crim. Doc. 4. Mr. Sims retained counsel, *see* Crim. Docs. 6, 18, and his original attorneys withdrew after Mr. Sims retained attorney Susan James, *see* Crim. Docs. 38, 41–43.

The charges against Mr. Sims followed "undercover controlled purchases of heroin via a confidential informant . . . and a subsequent search of [Mr. Sims's] vehicle." Crim. Doc. 26 at 1. "The controlled purchases were arranged by the [confidential informant] in recorded phone conversations," and the confidential informant "also wore a law enforcement recording device during the transactions." *Id.*

Mr. Sims's case was set for a jury trial on April 16, 2019. Crim. Doc. 51. A few days before trial began, the government filed a notice regarding Mr. Sims's prior convictions, which identified his prior convictions for serious drug felonies and explained the mandatory enhanced penalties that would apply if he were found guilty at trial. *See* Crim. Doc. 62. The government submitted that Mr. Sims had two prior state court convictions for serious drug felonies—the first in a 2007 case and the second in a 2015 case. *Id.* at 2. The government represented, "As to each of these convictions, the defendant served a term of imprisonment of more than 12 months and the defendant's release from any term of imprisonment was within 15 years of the commencement of the instant offenses." *Id.* The government also stated that

2

"[e]ach of these convictions also constitutes a 'felony drug offense.'" *Id.* The government thus concluded that the prior convictions required enhanced penalties pursuant to 21 U.S.C. §§ 841 and 851. *Id.* at 4.

Mr. Sims's case proceeded to trial, and the jury found him guilty on all counts. Crim. Doc. 67. The probation office prepared a presentence information report ("PSR"). Crim. Doc. 84. The PSR classified Mr. Sims as a career offender and adjusted his offense level accordingly. *See id.* at 8. According to the PSR, Mr. Sims faced a minimum sentence of twenty-five years and a maximum sentence of life in prison under the applicable statutes. *See id.* at 20. The sentencing guideline imprisonment range was thirty years to life. *Id.* The PSR did not identify "any factors that would warrant a departure from the applicable sentencing guideline range." *Id.* at 23.

The government initially objected to the PSR for failing "to reflect the enhanced statutory penalties pursuant to 21 U.S.C. § 851," and the probation office revised the PSR accordingly. Crim. Doc. 84-1 at 2; *see also* Crim. Doc. 77. Mr. Sims did not file any objections to the PSR. Crim. Doc. 84-1 at 2.

Mr. Sims did object to the enhancement pursuant to 21 U.S.C. §§ 841 and 851 and argued that the guidelines imprisonment range "severely overstate[s] the seriousness of the present offense conduct and his past criminal history." Crim. Doc. 81 at 2–3. He also objected on the basis that "he ha[d] a Sixth Amendment Right to

3

a jury finding regarding his prior convictions for enhancement purposes beyond a reasonable doubt." Crim. Doc. 82 at 1. He urged the court to consider a variance from the guidelines range if the court did not sustain his objection to the statutory enhancement. *See* Crim. Doc. 81 at 4.

The court entered judgment against Mr. Sims and sentenced him to thirty years for each count, with the sentences running concurrently. Crim. Doc. 85 at 1–2. Mr. Sims appealed the judgment, Crim. Doc. 92, and the Eleventh Circuit affirmed his conviction, Crim. Docs. 116, 116-1. Mr. Sims did not petition the United States Supreme Court for certiorari. Doc. 1 at 1.

On November 18, 2022, Mr. Sims timely filed a Motion By A Person In Federal Custody To Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. *Id.* He subsequently filed a supporting brief. Doc. 2. Mr. Sims claims that his conviction and sentence should be "set aside and vacated" because they "are a result of ineffective assistance of counsel." Doc. 1 at 2.

Mr. Sims claims that his attorney, Ms. Susan James, "was experiencing health complications" before, during, and after his trial, and these health complications negatively impacted his representation in multiple ways. *Id.* at 1–2. He claims that the "complications limited her time and ability to meet with [Mr. Sims] prior to trial," and Mr. Sims "first met with his attorney of record on the case only two days before trial, which did not provide ample time [to] prepare and formulate a viable

4

defense to the charges." *Id.* at 2. He claims that Ms. James "may have been under the influence of medication during the trial due to her health condition." *Id.* "She mentioned 'cocaine' during her argument to the jury when the evidence presented was only in regard to heroin and methamphetamine." *Id.* Mr. Sims also claims that his counsel "failed to file a Motion for New Trial," despite requesting and receiving two extensions to do so. *Id.*

In support of these allegations, Mr. Sims submits Ms. James's motion to withdraw, wherein she recites that she "has been suffering from an impaired immune system since the beginning of 2019 when she contracted staph." Doc. 1-2 at 1. Ms. James filed the motion to withdraw on June 18, 2020—after Mr. Sims's notice of appeal had been filed. *See id.*; Doc. 1 at 3. Ms. James stated that she was "at present physically unable to competently prepare to represent Mr. Sims on appeal," and "[i]t would not be fair to Mr. Sims for counsel to continue to represent him at the present time due to her ongoing health issues." Doc. 1-2 at 1. Mr. Sims relies upon these statements to conclude that Ms. James's "health complications existed throughout the pendency of [his] case and ultimately caused her to withdraw from" representing him. Doc. 1 at 3.

Mr. Sims articulated additional instances of ineffective assistance of counsel in his supporting brief. *See* Doc. 2. He claims that he did not receive effective assistance of counsel prior to trial because Ms. James did not (1) communicate "with

Sims and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) [c]onduct an adequate and independent pretrial investigation; and (3) [a]ttempt to negotiate a favorable Plea Agreement with a less harsh sentence." *Id.* at 1–2. He claims he did not receive effective assistance of counsel at sentencing because Ms. James did not (1) "[c]orrectly discuss and explain the PSR with [him] prior to the sentencing hearing; (2) [f]ile substantive objections to the PSR; and (3) [o]bject to [Mr. Sims's] sentence being substantively unreasonable." *Id.* at 2. He asks the court to vacate his sentence "so that he can plea anew or be resentenced without the career offender and proper 851 enhancements." *Id.* at 26. Alternatively, he requests an evidentiary hearing. *Id.*

The government filed a response in opposition to Mr. Sims's Section 2255 motion. Doc. 9. The government argues that Mr. Sims's "motion should be denied" because his claims "are without merit," and "he has not carried his burden to show deficient performance by his counsel or that he was prejudiced by such performance." *Id.* at 5.

Mr. Sims filed a reply, which primarily refers back to the grounds for relief set forth in his original Section 2255 motion. *See* Doc. 10. His argument is largely rooted in his counsel's alleged failure "to pursue . . . objections more vigorously . . . and . . . more forcefully," such that "he could have received a more favorable sentence." *Id.* at 5.

6

Mr. Sims also filed a Citation of Additional New Authority and directs the court to *Erlinger v. United States*, 602 U.S. 821 (2024). *See* Doc. 19. Mr. Sims claims that any fact that increases a criminal defendant's sentence must be "resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." *Id.* at 9. He "argues that his 2007 conviction for distribution of marijuana cannot be used as a career offender predicate or as a 'felony drug offense' . . . nor as a 'controlled substance offense' . . . because Sims was entitled to have a jury resolve 'the fact of a prior conviction' beyond a reasonable doubt." *Id.* He claims he "should be re-sentenced without the career offender enhancement." *Id.*

## II.    LEGAL STANDARD

Section 2255 authorizes a federal prisoner to move in the court of conviction to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). Such a motion is subject to heightened pleading requirements, which mandate that the motion specify all the grounds for relief and state the facts supporting each ground. *See* Rules Governing § 2255 Proceedings, Rule 2(b)(1)–(2); *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994). When a petitioner files a Section 2255 motion, it is subject to a court's preliminary review, at which time the court must dismiss the motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not

7

entitled to relief." Rules Governing § 2255 Proceedings, Rule 4(b). A petitioner is not entitled to a hearing or post-conviction relief when his claims fail to state a cognizable claim or amount to only conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible. *See Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).

To show ineffective assistance of counsel, a petitioner must demonstrate that: (1) his counsel's performance was deficient such that the performance "fell below an objective standard of reasonableness"; and (2) he suffered prejudice because of that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Unless a petitioner satisfies both prongs of the *Strickland* inquiry, relief should be denied. *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.

When a petitioner alleges that his prejudice was proceeding to trial—as opposed to pleading guilty—he must satisfy specific criteria. *See Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012).

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable

8

> probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164; *see also United States v. Smith*, 983 F.3d 1213, 1221–22 (11th Cir. 2020). "[A] defendant has no right to be offered a plea, . . . nor a federal right that the judge accept it[.]" *Missouri v. Frye*, 566 U.S. 134, 148 (2012).

A district court need not "hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Id.* (quoting *Guerra v. United States*, 588 F.2d 519, 521 (5th Cir. 1979)).

## III. ANALYSIS

Mr. Sims's allegations of ineffective assistance of counsel can be divided into three categories: (a) alleged lapses that occurred prior to trial, (b) alleged lapses that occurred at trial, and (c) alleged lapses related to his sentencing. The court will discuss each group in turn.

### A. Ineffective Assistance of Counsel Before Trial

#### 1. Failure to communicate regarding a plea agreement

9

Mr. Sims alleges that Ms. James failed to reasonably communicate with him before trial and thus violated Rule 1.4 of the Alabama Rules of Professional Conduct. *See* Doc. 2 at 10–11. More specifically, he claims she "failed to reasonably consult with [him] in regard to the decision to plead guilty or proceed to trial," "did not formulate or discuss . . . any strategy for defense," and "failed to discuss with Sims the career offender enhancement's application." *Id.* at 11. Mr. Sims claims that these communication lapses prevented him from "effectively participat[ing] in his defense" and led to an "unfavorable outcome." *Id.*

The government responds that Mr. "Sims fails to show how his knowledge of [his career offender] designation would have changed his plea decision, as he would have qualified as a career offender whether convicted by plea or at trial." Doc. 9 at 10–11. The government states that Mr. Sims has not carried his burden because he "offers no specifics as to what strategic choices [Ms. James] failed to adequately consider or what probable and practical effect different choices would have had on his case." *Id.* at 11. The government emphasizes "that the selection of a defense theory is a strategic choice, which is entitled to significant deference on review." *Id.*

In his reply, Mr. Sims reiterates that his counsel's "failure to explain the consequences of a guilty plea, specifically the 'career offender' designation[,] . . . is significant because it relates to counsel's obligations to provide accurate and complete information to [him]." Doc. 10 at 3. "Counsel's failure to explain the career

10

offender consequences **might** have affected Sims'[s] decision-making process." *Id.* (emphasis added). He also claims that the government's response to his "complaint about the lack of trial strategy" is lacking, *see id.*, but he does not provide specific examples of how his counsel lacked a strategy or how he was prejudiced as a result.

These allegations are insufficient for Mr. Sims to satisfy his burden of showing ineffective assistance of counsel. They are also conclusory and speculative. Mr. Sims has not provided sufficient detail to show that his counsel's communications were unreasonable, and he has not identified any specific decision or conduct that would have resulted in a different outcome. *See Strickland*, 466 U.S. at 687–88. He also has not made the specific showings necessary when alleging that he was prejudiced by proceeding to trial as opposed to pleading guilty. *See Lafler*, 566 U.S. at 163–64.

### 2.  Failure to conduct an independent pretrial investigation

Mr. Sims claims that Ms. James did not fulfill her obligation "to conduct a reasonable independent pretrial investigation of [his] case." Doc. 2 at 11–13. He states that she "failed to research the case law, investigate the purported confidential informant, interview witnesses, or investigate the facts of [his] case." *Id.* at 12. He claims that Ms. "James failed to become familiarized with the relevant facts, case law, applicable Guidelines, and potential sentencing range of a conviction." *Id.* at 12–13. If not for these lapses, "there is a reasonable probability that [Mr. Sims]

11

would have pleaded guilty and foregone a trial." *Id.* at 13. Ms. "James advised Sims to proceed to trial with the knowledge that he could be classified as a career offender. Sims would not have proceeded to trial if he had been provided the same knowledge." *Id.* Mr. Sims asks the court to vacate his conviction and sentence "so that he can plead anew." *Id.*

Mr. Sims has not shown that the government would have offered a plea agreement here. Nor has he shown what a pretrial investigation would have disclosed that his counsel did not know and that would have benefitted him. These allegations thus provide no basis for relief.

### 3. Failure to attempt to negotiate a favorable plea agreement

Mr. Sims alleges that he received a prejudicial sentence because Ms. James did not "inform [him] of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial." Doc. 2 at 16. Mr. Sims claims that he "was ill-informed by James of the likely consequences of pleading guilty rather than proceeding to trial," and he "decided to proceed to trial based on James's consistent assurance that pleading guilty [was] not the right way to proceed." *Id.* at 15. He claims that Ms. "James's advice was not based upon relevant facts of his case, or points of law, but rather a result of a lack of a proper investigation and lack of communication with Sims." *Id.* at 16.

12

In response, the government argues that Mr. "Sims cannot show that the government was willing to offer him any plea agreement, much less one that lowered his sentencing exposure." Doc. 9 at 12. The government is correct on this point, but the government's response does not account for the possibility of Mr. Sims entering a blind plea and receiving some discount for that—even without a recommendation by the government.

"To prove prejudice in the context of a foregone guilty plea, [Mr. Sims] must satisfy the three-part test the Court articulated in *Lafler v. Cooper* . . . ." *Osley v. United States*, 751 F.3d 1214, 1223 (11th Cir. 2014). This test requires Mr. Sims to show he would have received a more favorable outcome by entering a guilty plea. *See id.* at 1226; *Lafler*, 566 U.S. at 164; *Ocoro v. United States*, 607 F. App'x 864, 867 (11th Cir. 2015) (affirming denial of Section 2255 motion where the defendant "would have had the same result had he entered a blind plea of guilty"). In some cases, recommending a blind plea constitutes ineffective assistance of counsel. *See Esslinger v. Davis*, 44 F.3d 1515, 1530 (11th Cir. 1995) (finding ineffective assistance of counsel where attorney induced his client to enter a blind guilty plea to a felony that was subject to an enhanced penalty).

Any argument that Mr. Sims would have received a more favorable sentence if he had entered a blind plea is speculative, conclusory, and unsupported by the record. If he had pleaded guilty instead of proceeding to trial, he would have still

been subject to the same sentencing enhancements. As discussed in more detail in Part III.C.2–3 *infra*, the sentencing court was not receptive to arguments for a lesser sentence. Mr. Sims has not satisfied his burden of showing prejudice and is not entitled to relief. *See Lafler*, 566 U.S. at 163–64.

### B. Ineffective Assistance of Counsel at Trial

In his motion, Mr. Sims claims that Ms. James "may have been under the influence of medication during the trial due to her health condition," and "[s]he mentioned 'cocaine' during her argument to the jury when the evidence presented was only in regard to heroin and methamphetamine." Doc. 1 at 2. He does not discuss this further in his supporting brief, *see* Doc. 2, and he does not elaborate upon these allegations or explain how he was prejudiced by this conduct, *see* Docs. 1–2.

Mr. Sims's motion also states that Ms. James "failed to file a Motion for New Trial" despite requesting and receiving two extensions to do so. Doc. 1 at 2. He does not discuss this further in his supporting brief, *see* Doc. 2, and he does not explain how he was prejudiced by this conduct, *see* Docs. 1–2.

With these limited allegations, Mr. Sims has not met his burden of showing that any of these alleged lapses establish ineffective assistance of counsel under the *Strickland* standard. *See* 466 U.S. at 687–88.

### C. Ineffective Assistance of Counsel at Sentencing

#### 1. Failure to discuss the PSR with Mr. Sims before sentencing

14

Mr. Sims claims that Ms. James "did not explain [the PSR] to him so that he could understand the sentencing calculations." Doc. 2 at 17. He does not explain how this alleged lapse was unreasonable or prejudicial to him. He has thus not met his burden under the *Strickland* standard. *See* 466 U.S. at 687–88.

### 2. Failure to file objections to the PSR

Mr. Sims identifies multiple objections that he alleges Ms. James should have filed in response to the PSR. *See* Doc. 2 at 17–25. *First*, he claims that Ms. James should have objected to the PSR for its "erroneous application of the career offender and 851 enhancement." *Id.* at 17 (cleaned up). Mr. Sims was classified as a career offender because of two prior state court convictions for distribution of a controlled substance—one in a 2007 case and another in a 2015 case. *See id.* at 18. He claims that "[a]fter the passage of the First Step Act, [his] 2007 conviction for distribution of marijuana cannot be used as career offender predicate or as a 'felony drug offense' pursuant to 21 U.S.C. § 851 nor as a 'controlled substance offense' pursuant to 21 U.S.C. § 4B1.1 because" he was in prison for less than a year. *Id.* at 18–19. He argues that, after discounting the 2007 conviction, his mandatory minimum sentence should be fifteen years, and he should be resentenced for that amount of time. *See id.* at 20.

The government responds by pointing out that Ms. "James did object to the 851 enhancement." Doc. 9 at 13. "That those objections were unpersuasive to the Court does not establish deficient performance or prejudice." *Id.*

Mr. Sims replies "that his counsel's objection was not sufficiently strong or persuasive." Doc. 10 at 4. Mr. "Sims contends that his counsel failed to effectively challenge the application of the career offender designation, which had a significant impact on his sentence." *Id.* He argues that "his counsel's objection . . . was not pursued vigorously enough," and he "believes that a stronger objection **could have** resulted in a different sentencing outcome." *Id.* (emphasis added).

The record supports the government's position on this point. Ms. James filed an eleven-page objection to the 21 U.S.C. § 851 enhancement, setting forth many of the same Sixth Amendment arguments that Mr. Sims now makes in his Section 2255 motion. *See* Crim. Doc. 82. Ms. James also objected orally at sentencing, but the court overruled the objection. *See* Crim. Doc. 110 at 2–4, 7, 16.

Notably, the court expressly stated that the sentence would have been the same—with or without the enhancement:

> I will also note that to the extent it was possible, which I believe it was, for me to give you that sentence even if the 851 enhancement did not apply because it was a 25 years to 30 years, I think, guideline before that. **I would have given you the same thing, 360 months, effectively, as your sentence even if that did not apply.**

*Id.* at 13 (emphasis added). In the light of this statement, Mr. Sims cannot show prejudice.

*Second*, Mr. Sims claims that Ms. James should have objected to the drug weight calculation in the PSR. Doc. 2 at 20–23. Mr. Sims discusses various cases

16

standing for the proposition "that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt." *Id.* at 20–21. Mr. Sims claims that he "was found guilty of distribution of heroin . . . and possession with intent to distribute 50 grams or more of methamphetamine and an unspecified amount of heroin." *Id.* at 22. He alleges that he was sentenced "based on the 19,206.01 kilograms of Converted Drug Weight referenced in the PSR," which differs from the jury's finding. *See id.* He states that, if his sentence had been properly imposed in accordance with the jury's drug quantity determination as well as removal of the career offender enhancement, the minimum sentence would be fifteen years. *See id.* at 23. He requests resentencing for that term. *Id.*

The government responds that Mr. Sims's arguments are based upon "his novel reading of caselaw or his policy disagreements with the sentencing guidelines" and do not show ineffective assistance of counsel. Doc. 9 at 14. The government states that controlling law "only requires that the government allege and prove to a jury those facts that trigger a minimum mandatory sentence; this was done here, as the jury found Sims to have possessed 50 or more grams of methamphetamine." *Id.* at 13–14.

In reply, Mr. "Sims asserts that his counsel did not adequately challenge the prosecution's calculations," and "there were errors in the determination of drug

17

weight, which led to an inflated sentence." Doc. 10 at 5. Mr. Sims claims that "[a] more robust objection . . . could have led to a lower drug weight calculation and, consequently, a less severe sentence." *Id.*

Mr. Sims does not identify any specific errors in calculating the drug weight. He alleges there were errors in the calculations, but conclusory statements are not a basis for relief. His argument that a more vigorous objection could have led to a lower calculation is insufficient to show that his attorney's actions were unreasonable or prejudicial under *Strickland*. *See* 466 U.S. at 687–88.

*Third*, Mr. Sims claims that Ms. James should have objected to the drug purity calculation in the PSR. Doc. 2 at 23–25. He urges the court to disregard the distinction made in the Sentencing Guidelines between "pure" or "actual" methamphetamine and a "methamphetamine mixture." *See id.* He argues that using "drug purity as a proxy for culpability" is "no longer true for methamphetamine." *Id.* at 24. He asks to be "resentenced without the purity of the substance taken into account." *Id.* at 25. In his reply, he "asserts that his counsel did not adequately challenge the prosecution's calculations," Doc. 10 at 5, but he does not provide any additional detail about this alleged lapse or how it would have changed the outcome. Mr. Sims cannot show that his counsel was unreasonable for failing to encourage the court to disregard applicable sentencing guidelines, and his allegations about challenging drug purity are insufficient to show ineffective assistance of counsel.

18

### 3. Failure to object to reasonableness of sentence

Mr. Sims claims that Ms. James provided ineffective assistance when she "failed to file any kind of a motion for a downward variance" and "failed to object to [Mr. Sims's] sentence being substantively unreasonable." Doc. 2 at 25. He claims that his "sentence is not commensurate with the seriousness of his offense." *Id.* He argues that if Ms. James had "been prepared, properly argued PSR objections to the offense level enhancements, and argued for mitigation of his sentence, there is a strong likelihood that Sims would have received a substantially less harsh sentence." *Id.* at 26. Mr. Sims states that he received a longer sentence because of "the increase in the calculation of his sentencing range based on the erroneous drug calculation, career offender and 851 enhancements." *Id.*

The government responds by stating that Ms. "James did object . . . to the reasonableness of Sims's sentence." Doc. 9 at 13. The record supports the government's position. At sentencing, Ms. James objected to the sentence as unreasonable. *See* Crim. Doc. 110 at 16. The court overruled her objection and stated, "I think I have made myself clear that that's what I would have given to him either way." *Id.*

In reply, Mr. "Sims argues that his attorney did not effectively present mitigating factors and compelling arguments that could have influenced the court to impose a more lenient sentence." Doc. 10 at 5. He "believes that a well-supported

objection based on the sentence's reasonableness, combined with effective advocacy, could have resulted in a reduced sentence." *Id.*

Ms. James did present mitigation evidence on Mr. Sims's behalf. At sentencing, his mother testified on his behalf, and his sister attended to show her support. *See* Crim. Doc. 110 at 8–11. Ms. James asked the court to impose "the least possible sentence." *Id.* at 11. The court invited Mr. Sims to speak on his own behalf in mitigation, and he declined to do so. *See id.* at 11–12.

Mr. Sims was sentenced based on the applicable statutes and sentencing guidelines. The sentencing judge clearly stated that the sentence would have been the same, even without the enhancements. Mr. Sims has not shown that he received ineffective assistance of counsel—or that different decisions by his counsel would have led to a more favorable outcome.

### D. *Erlinger v. United States*

After briefing was complete, Mr. Sims filed a Citation of Additional New Authority, which directed the court to *Erlinger v. United States*, 602 U.S. 821 (2024). *See* Doc. 19. Mr. Sims relies upon this case—along with other authorities—to argue "that his 2007 conviction for distribution of marijuana cannot be used as a career offender predicate or as a 'felony drug offense' . . . nor as a 'controlled substance offense' . . . because Sims was entitled to have a jury resolve 'the fact of prior conviction' beyond a reasonable doubt." *Id.* at 9.

20

*Erlinger* "concerns the Armed Career Criminal Act (ACCA) and the Fifth and Sixth Amendments." 602 U.S. at 825. The Court addressed the issue of "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." *Id.* The Court held that the defendant "was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt," but "decide[d] no more than that." *Id.* at 835. In *Erlinger*, the parties "disagree[d] vigorously about whether" the defendant's prior offenses—which "had the effect of increasing *both* the maximum and minimum sentences he faced"—"took place on at least three different occasions (so that ACCA's enhanced sentences would apply) or during a single criminal episode (so that they would not)." *Id.* The Court reasoned that, after considering the relevant evidence, a jury could have reached either conclusion. *See id.*

The *Erlinger* Court went on to acknowledge precedent "permitt[ing] a judge to undertake the job of finding the fact of a prior conviction—and that job alone." *Id.* at 837 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 246–47 (1998)). The Court recognized that, although that prior decision has been criticized, "[i]t persists as a 'narrow exception' permitting judges to find only 'the fact of a prior

conviction.'" *Id.* at 838 (quoting *Alleyne v. United States*, 570 U.S. 99, 111 n.1 (2013)). *Erlinger* did not revisit that recognized exception. *Id.* But the Court stated:

> Often, a defendant's past offenses will be different enough and separated by enough time and space that there is little question he committed them on separate occasions. But none of that means a judge rather than a jury should make the call. There is no efficiency exception to the Fifth and Sixth Amendments.

*Id.* at 842.

Unlike the defendant in *Erlinger*, Mr. Sims's sentence was not enhanced based on the ACCA, and there is no dispute about whether his prior offenses were committed on separate occasions. The *Erlinger* Court was careful to limit its opinion as "decid[ing] no more" than the "ACCA[] occasions" issue before it. *See* 602 U.S. at 835. *Erlinger* also recognizes that governing law permits a judge to find "the fact of a prior conviction"—such as Mr. Sims's two prior drug convictions here. *See id.* at 838 (cleaned up). *Erlinger* does provide a basis for arguing that, even in a situation where "there is little question" that prior offenses were committed "on separate occasions," a jury must make that determination. *See id.* at 842. However, Mr. Sims cannot show that relief should be granted here because he cannot show prejudice: the sentencing judge stated that he would have given Mr. Sims the same sentence without the enhancement. *See* Crim. Doc. 110 at 13.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Sims's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence, Docs. 1–2, is **DENIED**. The Clerk of Court is **DIRECTED** to terminate the pending motions in this case.

**DONE** and **ORDERED** this 12th day of March, 2026.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE